**MALL TOOL CO. v. QUAKER VIBRATORS, Inc., et al.**

**No. 9933.**

District Court, E. D. Pennsylvania.

Nov. 18, 1939.

For original opinion, see 29 F.Supp. 718.

James C. Wobensmith and Zachary T. Wobensmith, 2nd, both of Philadelphia, Pa, and Harry H Hitzeman, of Chicago, Ill., for plaintiff.

Swartz, Campbell & Henry and Ward C. Henry, all of Philadelphia, Pa., and Bair & Freeman, and W. P. Bair, and Will Freeman, all of Chicago, Ill., for defendants.

842

KIRKPATRICK, District Judge.

The plaintiff's argument to the effect that claims 5 and 6 (originally 32 and 33) were intended by the applicant to continue the broad concept embodied in claim 8 for internal vibration generally, and that the element "progressively moving the said vibrating body in the material" was inserted for the sole purpose of distinguishing the claim from Atterbury (which the patentee apparently assumed disclosed internal vibration but in which the vibrator was stationary), merits careful consideration, and I have endeavored to accord it. The difficulty with it is that, even if it be conceded that the applicant so understood and intended it, the fact remains that the Patent Office proceedings resulted in the grant of a patent, and the rule of interpretation is well established that where an ambiguous word or expression ("progressively moving") appearing in the final integration of any contract or transaction (the claim as granted) has been chosen by one of the parties and accepted by the other, it must be understood, not in the sense in which the party choosing it may have understood or intended it, but in the sense in which he had reason to suppose it would be understood by the other party. 12 Am.Jur., Contracts, Sec. 231. The Restatement of the Law of Contracts, Sec. 227, proposes as one standard of interpretation "a standard of reasonable expectation, which would attach to words * * * the meaning which the party employing them should reasonably have apprehended that they would to the other party." The law of contracts does not judge a promisor's obligation by what is in his mind, but by the objective test of what his promise would be understood to mean by a reasonable man in the situation of the promisee. Lee v. State Bank, 2 Cir., 54 F.2d 518, 85 A.L.R. 216. The negotiations between the parties to a contract (which, in the case of a patent, are found in the file wrapper history) may be examined by the Court to supply an interpretation of a claim of doubtful meaning. Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 26 L.Ed. 149.

Thus it would seem that the applicant's intention or understanding in this case is immaterial if the examiner who finally allowed the claim was led to believe or would reasonably understand that the applicant meant something different.

Now, the applicant was the party who selected the particular expression and who phrased the entire claim in which it occurred. He did so shortly after the examiner had said to him (in effect), "I understand that you have elected in this patent to prosecute only the claims in which the vibrator floats in the concrete." See action of February 1, 1932. With this statement of the examiner's understanding (right or wrong) before him, he selected the expression in question and, in the same communication, withdrew his broad general claim (8) which covered internal vibration generally. In the same communication he also explained that these new claims were adapted to protect "the method" more broadly than claims 25 and 26 (claims which described floating vibrators) because, as he points out, these new claims add lifting the vibrator by some outside means as the level of the concrete rises. Perhaps it would be well to set forth fully what he said: "Claims 32 and 33, which replace claim 8, and which finally must be placed ahead of the others, are based on the content of page 16 of the specification. They are adapted to protect the method more broadly than claims 25 and 26; in fact, the latter relate to the particular case which the immersed vibrating body is adapted to rise automatically under the action alone of the thrust exerted by the liquefied material. It is obvious that the principle of the invention also includes the case in which an external force would be adjoined to this thrust, the weight of the vibrating body can then be of any value relatively to its volume." In other words he is saying in effect, "25 and 26 were too narrow because the only thing that made the vibrator rise as fresh concrete was poured was the support given to the floating vibration device by the concrete itself. I am broadening these claims by providing that you can lift the vibrator ('an external force would be adjoined to this thrust') and then you do not have to worry about the weight of the vibrator." The reference to page 16 of the specification might appear to the examiner to have to do with the "slow withdrawal" feature of proposed claim 33 (later 6).

In view of all this, it would seem almost certain that, whatever the applicant had in mind, the examiner or anyone in his place would reasonably understand that "progressively" meant rising with the surface of the poured cement, and that the

applicant should reasonably have apprehended that it would have conveyed that meaning to the examiner. It is difficult to see how the applicant could have been under any misapprehension as to the meaning which the examiner would get from his conduct and statements. It is not beyond the realm of possibility that he intended the examiner to get just that idea, in order to get a claim upon which the applicant might later on make the argument, which the plaintiff now makes, that the rejected claim 8 was, in effect, granted.

The motion for a new trial is denied.