## KEITH v. CHARLES E. HIRES CO., Inc.
### No. 19.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1940.

Frederick C. Randolph, of New York City (Theodore S. Kenyon and Douglas H. Kenyon, both of New York City, of counsel), for appellant.

Ralph E. Slayton, of New York City (Lawrence Bristol, of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing for noninfringement a complaint upon two patents for a cardbox carrier of bottles. The first patent, No. 2,070,399, was granted on the application of Thomas H. Goldring on February 9, 1937 (claims three and four are here in issue); the second, No. 2,094,744, was granted to Claude D. Keith on October 5, 1937 (claims one and two are in issue).

### The Goldring Patent.

The Goldring patent disclosed a flat piece of cardboard which could be folded into a sort of sling to serve as a carrier for six bottles in two opposed tiers. Each bottle was held in place by an opening in the side of the holder, upright after folding, and by a separate hole through which its neck passed. The two ends of the cardboard sling were brought together so as to press together the two rows of bottles and hold them securely in place. The defendant's supposed infringement is substantially like the disclosure except that instead of two separate openings, one for the side of each bottle and another for its neck, it has a single elongated oval slot through which the bottle protrudes, the bottom of of the slot being at about the middle of the body of the bottle, the top just below the top of the bottle. We shall assume arguendo that the patent was valid and address ourselves only to the claims. At one stage of the application the examiner suggested that claim three, as allowed, and another claim (both quoted in the margin),* were proper issues for interference, and the applicant accepted both by amendment. Claim three did not in fact go into interference, but the other claim did and Goldring won. Thereafter the examiner rejected that claim for reasons which do not appear, but allowed claim three. The situation is not therefore literally one where a claim was first rejected and was afterwards amended to secure allowance. In that event it is of course well settled that the new element introduced cannot thereafter be disregarded upon the issue of infringement. The origin of this doctrine appears to have been Leggett v. Avery, 101 U.S. 256, 25 L.Ed. 865, though the facts did not there exactly present the question; the patentee upon a second reissue had reintroduced limited claims which he had abandoned in the first. However, the decision was almost at once treated as a precedent in a case where the claim was amended to secure allowance (Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 228, 26 L.Ed. 149) and that has always been the normal situation. Down to the present time the Supreme Court has shown no disposition to relax the rule

---

* Cancelled Claim. A bottle carrier comprising a strip having a middle-part for supporting the bottoms of the bottles and side-parts extending oppositely from said middle-part and foldable upwardly, the free ends of said side-parts being adapted to be brought together adjacent the tops of the bottles and at least one of said free ends being apertured to serve as a carrying handle, and said side-parts having apertures extending from the middle-part towards the free ends of the side-parts; said apertures being oppositely located to receive and by their margins engage the sides of the bottles.

Claim three. A bottle carrier comprising a strip having a middle-part for supporting the bottoms of bottles and side-parts extending oppositely from said middle-part and foldable upwardly; said side-parts having lower portions forming side walls for the carrier, intermediate portions folded inwardly and upwardly and upper portions in abutting relation having registering apertures to provide a handle for the carrier; said lower portions having apertures adapted to receive portions of the bottle sides, and said intermediate portions having apertures aligned with the apertures in the adjacent lower portions and adapted to receive the tops of the bottles.

48

then established. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443, 47 S.Ct. 136, 71 L.Ed. 335; Smith v. Magic City Club, 282 U.S. 784, 789, 790, 51 S. Ct. 291, 75 L.Ed. 707; Smith v. Snow, 294 U.S. 1, 15, 55 S.Ct. 279, 79 L.Ed. 721. We can see no difference between that situation and one where as here the applicant files a limited and a broader claim at the same time and then cancels the broader one when it has been rejected. The theory of the "estoppel," as it is called, is that, by assenting to the cancellation of the claim and by amending it, the applicant has abandoned it as it stood. Certainly it cannot be necessary to this conclusion that he shall amend the cancelled claim, when he has already filed a claim which contains the necessary differentia.

The "estoppel" is itself important only as a bar to any resort to the doctrine of equivalents. Without that doctrine every claim is indeed entitled to be interpreted in the light of the specifications as a whole, and not to be read merely with a dictionary. But often even with the most sympathetic interpretation the claim cannot be made to cover an infringement which in fact steals the very heart of the invention; no matter how auspiciously construed, the language forbids. It is then that the doctrine of equivalents intervenes to disregard the theory that the claim measures the monopoly and ignores the claim in order to protect the real invention. Claude Neon Lights v. Machlett & Son, 2 Cir., 36 F.2d 574; Otis Elevator Co. v. Atlantic Elevator Co., 2 Cir., 47 F.2d 545, 547; Oates v. Camp, 4 Cir., 83 F.2d 111, 116. The "estoppel" of the file-wrapper puts an end to the court's power to do this; the applicant has abandoned his privilege to resort to an equivalent of the differentia, which all infringements must therefore embody. He may still insist that his claim shall be generously interpreted, but his monopoly stops where interpretation stops. So far therefore as, but for the estoppel, Goldring might have been entitled to go beyond claim three in the case at bar, he lost that privilege as to the element by which that claim differs from the cancelled claim.

It will be observed that the cancelled claim was merely for a "strip" with a "middle-part" and "side-parts," the first to support the bottles, and the second to be folded together to make a handle above the bottle tops. The "side-parts" had "apertures extending from the middle-part towards the free ends;" the apertures were opposite to each other on opposite sides of the holders, and embraced the sides of the bottles. Nothing was said about where the apertures were to be in the "side-parts," nor was there any mention of the holes ("apertures") through which the necks of the bottles passed as described in the disclosure (page 1, lines 11, 14-20, 29-35). In claim three on the other hand the "side-parts" were divided into three "portions," "lower," "intermediate" and "upper." The "lower" portions made "side walls for the carrier," the "intermediate" portions were "folded inwardly and upwardly," and the "upper" portions abutted upon each other to make the handle. The "lower" portions were to have "apertures adapted to receive portions of the bottle sides." So far there was no difference between the two claims except that the "apertures" of claim three did not have to start at the "middle-part," i. e. at the base; that was not however a limitation, but an expansion of the claim. The only limitation was the following: "the intermediate portions having apertures aligned with the apertures in the adjacent lower portions and adapted to receive the tops of the bottles." If it were possible to read this as not requiring two separate "apertures," it might be possible to expand the claim under the doctrine of equivalents so as to include the defendant's carrier; but we do not see how this can be done without assimilating claim three to the cancelled claim. "Apertures" in the "intermediate portions * * * aligned with * * * apertures in the * * * lower portions" certainly cannot be read as a single vertical "aperture" running from one "portion" into the "portion" above it; an "aperture" cannot be "aligned" with itself. In such a case it is almost inevitable instinctively to resort to the doctrine of equivalents to escape such verbalism; but that is precisely what the "estoppel" forbids, as we have said. We hold therefore that the defendant did not infringe claim three; and what we have said applies equally to claim four.

We shall also assume arguendo that the Keith patent is valid, and the decision again turns on infringement. The next to last clause of claim one reads as follows: "a gripping contact of said edges of the neck-gripping apertures with the neck of the bottles to cause a part of the

weight of the bottom to be carried by said neck-engaging member." In claim two the same feature is expressed in the following language: "neck engaging sections having neck-insertion apertures * * * being arranged in erected condition of the carton to cause a gripping engagement * * * and a supporting of part of the weight of the bottles." The issue was sharply fought at the trial whether the defendant's putative grip did actually support any weight of the bottle. The plaintiff's experimental tests did indeed make that appear probable but later the defendant's tests seemed to show that this apparent grip had substantially depended upon the fact that the bottles used had been sticky. When clean bottles were substituted, they could not be lifted, and whatever grip there was became theoretical. It is possible that in the defendant's carrier the clutch of the "aperture" upon the neck of the bottle above, and upon its body below, may take up an ounce or two of weight. We are not very well satisfied as to that, but we need not decide it, for it is not enough to satisfy the claims. They must be read upon that part of the specifications (page 2, lines 11. 33-37) which speak of "a pinching, gripping or clamping pressure to be applied at opposite sides of the neck of the bottle, thus greatly assisting in carrying the load, relieving the stress of the weight of the load on the bottom of the carton." So far as we can tell as an original matter, that does not happen; but it was an issue primarily for the judge, depending as it did upon a conflict of testimony and the interpretation of experiments made before him. He has found (Finding 31) that "the neck-gripping engagement of the bottles by the apertures * * * is not found in the defendant's cartons," and it is plain that we should not be justified in declaring that this was "clearly erroneous," which we must do in order to reverse. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

We see no reason to discuss whether there is an "estoppel" as to the "neck-gripping" element of these claims. While it is sometimes said that every claim has some range of equivalents, it is as often said that one may not wholly disregard any element of a claim. Without seeking to reconcile that conflict, we can say here that, regardless of any "estoppel," Keith's advance beyond Goldring was not enough to justify our ignoring the "gripping" ele-

ment; indeed it would be very hard to find anything else upon which his invention could rest. Therefore, once it is settled that the defendant's carrier has no "neck-grip" within the meaning of the claims, the plaintiff inevitably loses.

Judgment affirmed.