## THOMAS et al. v. SIMMONS CO.
### No. 7731.

Circuit Court of Appeals, Seventh Circuit.
March 18, 1942.

Casper W. Ooms and Kent W. Wonnell, both of Chicago, Ill., for appellants.

Wm. E. Anderson and Cyril A. Ioans, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellants charged appellee with infringement of claims 1, 9, 10, 11, 12, 14, 15 and 17 of United States Patent No. 2,007,-988; and claims 21 and 22 of United States Patent No. 2,197,735. Both were issued to Thomas on the respective dates of July 16, 1935, and April 16, 1940, on applications filed respectively on February 18, 1932, and July 6, 1936. The defenses were invalidity and non-infringement. The court did not pass upon the issue of validity, but found there was no infringement and accordingly dismissed the complaint, and from that judgment this appeal is prosecuted.

Both patents relate to an article of furniture which forms a davenport for living room use and can be converted into a bed. The alleged objects of the first invention are: To provide a number of sections mounted in a frame below and behind the seat section, which are pulled into alignment with the back section between the other sections; to mount a folding structure of this kind in a frame upon levers; to mount the sections so that the rear section engages the underside of an upholstered back; to provide means in connection with the supports for the bed sections for assisting the folding and unfolding movements of the sections; to provide means for locking the sections in their extended position; to provide means for correlating the movement of the sections in folding and unfolding them; to automatically extend and fold the supporting legs as the structure is folded and unfolded; to utilize opposite sides of one of the sections as a seat and as a sleeping surface to provide a sectional folding structure which requires a folding mattress of reduced size to counterbalance the movement of the sections in folding and unfolding them.

Claims 1 and 11 of the first patent are conceded to be typical.[1]

1. "A seat bed structure comprising a frame with an upholstered back spaced from the rear of the frame, a sectional seat and bed frame having connected seat back, and under the seat sections, the back section folding uprightly behind the others and extending behind the upholstered back, means for mounting one of the sections to swing within the frame, and correlating means consisting solely of links and levers connecting all of the sections for collapsing, positioning and extending them in a predetermined manner as they are moved into and out of the frame."

11. "In a seat bed structure, a frame, connected seat, back, and under the seat sections, a fixed back providing a space for the back section at the rear of the frame, means for connecting the back section in the frame to swing from a vertical to a horizontal position, side connections between the sections constituting the sole means for extending the seat section in advance of the other two sections and inverting it in moving the sections into alignment."

All of the elements comprising this combination are very old in the art. The alleged novelty of the claims seems to lie in combining the prior elements of claim 1 with the element referred to in the last clause of that claim, that is to say, "correlating means consisting solely of links and levers connecting all of the sections for collapsing, positioning and extending them in a predetermined manner as they are moved into and out of the frame." The corresponding language in claim 11 is as follows: "Side connection between the sections constituting the sole means for extending the seat section in advance of the other two sections and inverting it in moving the sections into alignment."

Original claim 1 stated the correlating means very broadly as "connecting the sections for collapsing and extending them in a predetermined manner." All the original claims here in issue as amended were rejected on references to Thomas, 1,821,126; Shumsky, 1,049,772; Sowle, 1,295,935; Luppino, 1,139,785; and Jeffcott, 1,012,558. Claim 1 was rejected on Jeffcott, in view of Thomas and Shumsky. Thomas then amended the original claim in which he described the correlating means as "comprising links and levers connecting all of the sections for collapsing, positioning and extending them in a predetermined manner." In support thereof Thomas said to the examiner:

"* * * This linkage comprises a master or locking link and a number of links or levers extending therefrom to the several sections and between the sections. This construction makes it possible for the operator of the bed to grasp the front edge of the under-the-seat section * * * and by simply moving this section upwardly and outwardly to unfold the three bed sections into alignment with a single outward movement; the sections assuming their proper positions with the back section between the other two and the seat section simply inverted within the frame. This is also true of the modifications in the sense that one motion only is necessary. The operator grasps one section and moves outwardly with it and the other sections are unfolded into alignment without any further attention upon the part of the operator as is necessary, for example, in the patent to Luppino and Jeffcott in both of which there is an intermediate position from which the seat must be overturned and in the latter there is a carriage which must first be moved

out of the frame and then the seat overturned."

In the same amendment Thomas again distinguished the structure of the Luppino patent from other claims not here directly in issue, as follows:

"Claims 2, 3 and 4 are likewise distinguished by amendment from the above mentioned references and in addition it will be found that the structure of Luppino is similar to the other patents of record in providing a seat section which is first moved to the position shown in Fig. 2, a raisable back to uncover the sections, and a seat structure which must be inverted by a separate movement on the part of the operator after the seat has assumed the position shown in Fig. 2."

He further stated that by the amendment he had "now made the correlating means more specific by stating that it is the links and levers which connect all of the sections for collapsing, extending and positioning them in a predetermined manner as they moved out of the frame."

Claim 1 as amended was also rejected, with additional references to Arton, No. 1,637,797, and Kampe, No. 1,062,337. It was again amended, in accordance with the examiner's suggestion, by substituting the words "consisting solely of" for the word "comprising." Thomas then further distinguished his invention from Jeffcott in that the latter refers to his "sections being folded in by their connection with each other, and not by a correlating means which *consists solely* of the said linkage as now set forth in the above claims (in suit)." He further stated that the references relied upon by the examiner were "all insufficient * * * for the reason that they fail to show the *invention* which the applicant is attempting to claim; *namely, the provision of a linkage connecting the sections at their sides which has the function not only of causing the sections to move outwardly together but also to overturn and form in alignment and constituting the sole means by which the sections are moved."* (Our italics.)

From this record it is clear to us that the claims in issue were allowed only after Thomas insisted that his correlating linkage, which permitted his davenport to be operated by a single continuous movement, was absent in the prior art, wherein the seat section was static in an intermediate position from which it was manually over-

turned by a separate movement of the operator, as in Luppino and Jeffcott. True, in the latter there is a carriage upon which the seat must be moved out of the frame before the seat is overturned, and in the patent the carriage is eliminated. However, this seems not to have been the distinguishing feature before the examiner or the trial court. Whether this was due to the fact that the triers concluded that the exclusive use of levers rather than the combined use of levers and carriage was taught by the prior art, or that the change was mere skill of the calling, is immaterial here, because the claim was rejected until it included Thomas' interpretation of his disclosure as above stated.

Little need be said of defendant's structure. To open it the operator grasps the bottom front, lifts it up, steps backwardly, and sets it on the floor. In this position the rear section is supported by two links, and the front of the intermediate section is supported by its two legs. The operator then removes his hand from the front board, grasps the end rail of the seat section, and manually swings it outwardly through an arc of 180 degrees in order to bring it to its fully extended position. To close the davenport the above operations are reversed. The inverting movement of the seat section in either opening or closing it transmits no motion to the other sections and they remain static, except for a slight pivotal play which in no sense is transmitted motion. There is no linkage connecting all of the sections that in any way affects their movement, and none of the linkage in any manner affects the movement of the end or outer section of appellee's bed in the sense that Thomas interpreted his claims before the examiner.

■■ Much is said here in effect about the injustice of the defeat of appellants'

rights under the patent by an accused structure which differs so insignificantly from the patent. We think the difference, regardless of its extent, is not insignificant. To construe the patent more broadly than we have would defeat it. It is not denied that Thomas was working in a very narrow and limited field. He was accorded his patent upon a very narrow margin, and he can not complain if infringement is denied with reference to a structure which eliminates the very narrow feature upon which the patent is based. We think the District Court did not err in holding there was no infringement of the first patent. We are of opinion that the evidence before us is not sufficient to overcome the presumption of validity which attaches to the issuance.

The invention which is asserted in claims 21 and 22 of the second patent[2] is said to reside in providing a convertible seat structure having a spring-stretched metal fabric which extends lengthwise of the different foldable bed sections, with a seat section of the fabric so mounted that one side thereof may be used as a seat, and the other side may be used to form a sleeping surface or a support for a mattress without leaving hard spots to render either the seat or bed uncomfortable at any spot. This is accomplished by so mounting the continuous fabric in the seat section of the frame that when it is in the seat position the endless seat fabric is supported at the front and the rear of the seat only, so that when a person sits on the seat close to the arm the seat portion of the fabric above the seat structure at the ends is free from any supporting hard spot.

The novelty is said to lie in combining a continuous outline frame comprising several foldable bed sections with a metal supporting fabric extending from end to end lengthwise of the bed throughout the sec-

[2] 21. "In a convertible seat bed, an invertible seat structure comprising also a section for the bed, other connected bed sections at the rear of and below the seat section in folded condition, a flexible bed fabric extending from end to end within the sections, and means for supporting the seat portion of the fabric above the seat structure at the ends thereof in seat position so the seat fabric is free from supporting hard spots near the ends rearwardly of the front when used as a seat.

22. "In a convertible seat bed, an invertible seat structure comprising also a section for the bed, other connected bed sections at the rear of and below the seat section in folded condition, a flexible bed fabric extending from end to end within the sections, means for supporting the seat portion of the fabric above the sides of the seat structure at the seat end of the fabric in seat position, and the seat portion of the fabric serving directly as the seat support in closed position and the opposite side of the seat portion of the fabric serving directly to support a mattress thereon normally folded between the sections and extended with them when the sections are unfolded to form a bed."

tions and at the same time in supporting the fabric at the ends of one of the sections so that the section does not have frame members or supports.

The specification says nothing about the desirability of forming a soft, comfortable seat without hard spots, but it states that the invention relates in general to a construction in which " * * * the seat section is overturned rearwardly to form the rear section of a bed, and the other sections are simultaneously moved outwardly from below the seat and into alignment in front of the overturned seat section." The patentee limits most of his claims to such a construction, and includes as an element a seat structure which may be overturned rearwardly to form the bed surface.

With respect to the second patent the issue as stated by appellants is whether the accused structure avoids infringement because its seat section inverts forwardly, while in the patent it inverts rearwardly. We think this must be answered in the affirmative. Apellants refer to this difference as a mere change in form, but we think it is more than that. In view of the facts disclosed by the file wrapper we are convinced that the difference is fundamental. Before the examiner, Thomas stressed this difference as a distinguishing feature from his patent, No. 2,007,988 (here in issue) ; Davis, No. 1,270,384; Andina, No. 561,751; Dewey, No. 1,489,430; and Coopersmith, No. 1,272,626, and said " * * * the structures shown do not overturn rearwardly." With reference to Kelly, No. 1,476,981, and McIntyre, No. 641,988, he said " * * * neither one has a seat section which is overturned rearwardly and therefore the inventive problem solved in the present case is entirely different * * *." On the same feature he also distinguished from Wersel, No. 1,256,752; Lindquist, No. 937,538; and Percival, No. 991,535.

Appellants, however, insist that the District Court failed to consider that the claims in suit are directed to the construction and mounting of the flexible bed fabric, so as to avoid hard spots caused by the presence of frame members, and that such construction and mounting is not disclosed in the first Thomas patent, nor is it made the subject matter of any claim therein, but that it is found in appellee's structure which responds to the claims in suit, and is entirely missing from the prior art.

It was not until after the allowance of the Thomas application, and three and one-half years after it was filed, that he inserted any claim for the disclosure of a soft, comfortable seat without hard spots. Obviously such claims were the result of Thomas' inspection of appellee's structure at the Furniture Market in January 1940. He testified that by such claims he attempted to cover specifically everything that he thought was infringed by appellee. He told the examiner that the added claims were patterned directly after claims already allowed, and that the entry of the amendment would require no additional search by the examiner. He further told the examiner that each additional claim was in effect a limitation so that they might be considered as "specific or sub-combination claims comprising in effect a novel and patentable addition to claims 11 and 14," which now appear as claims 10 and 13 in the file wrapper and patent. Those claims are not in suit, apparently for the reason that they disclose elements or limitations which are not found in appellee's structure. However, the added claims 21 and 22 are even narrower than claims 10 and 13. That fact is verified by Thomas' representation to the examiner which it was necessary for him to make in order to secure the claims in issue. Under these circumstances he can not now enlarge those claims, Ladenson v. Overspred Stoker Co., 7 Cir., 89 F.2d 242, nor will he be heard to say now that claims 21 and 22 cover a structure which is not covered by claims 10 and 13 of the patent.

Moreover, in the specification of this patent, which must be presumed to bear some sort of a relation to each claim, Thomas, in stating the main objects of his invention, said that it related to a structure in which the seat section is overturned rearwardly to form the rear section of a bed, and the other two sections are simultaneously moved outwardly from below the seat into alignment in front of the overturned seat section. No doubt the District Court had this in mind when it held that if appellee's structure did not infringe the first patent, it could not be held to infringe the second. We think that conclusion is sound.

However, in the second patent the elimination of the hard spots is caused merely by spacing the frame bars downwardly below the spring fabric, so that the weight of the body upon the fabric will not

cause it to touch the bars. This is precisely what the accused structure does, but Thomas testified that dropping frame bars to avoid hard spots had been used for forty years and was common practice with any average mechanic. He said, "I know that I was trying to develop a seat with a soft edge at the two sides and to do that I had to drop the rail naturally." This feature as well as that of suspending the flexible fabric between the ends of the frame is found in McIntyre, No. 641,988; Hall, No. 612,-336, and many others cited, including Busch, No. 1,397,203; and Bayer, No. 1,418,055, which are owned by appellee. Some of the art show both features, and others show one or the other, and if the disclosures of the patent in these respects vary in any manner from the prior art, including the first patent in suit, such variations are a result of the skill of the art, and do not amount to invention.

We affirm the judgment of the District Court, and we further adjudge claims 21 and 22 of the second patent invalid for lack of novelty and invention.