Richard J. BROOKS, and Burton Brooks, Plaintiffs,

v.

Edwin L. REYNOLDS, Acting Commissioner of Patents, Defendant.

Civ. A. No. 313–64.

United States District Court
District of Columbia.

April 7, 1965.

Norman Blumenkopf, Edwin A. Shalloway, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145, seeking judgment authorizing the defendant, Acting Commissioner of Patents, to issue Letters Patent of the United States containing claims 11 through 14 inclusive of an application Serial No. 774,600, filed by plaintiffs November 18, 1958, entitled "Separation of

Sulfonic Acid From Excess Sulfonating Agent."

The invention described in the application relates to a process of separating alkyl benzene sulfonic acid from a reaction mixture containing the same and sulfuric acid. To achieve separation, the mixture is diluted with water and then subjected to a vacuum which removes extraneous gas. The constituent parts of the mixture then settle by gravity into distinct phases, which allow them to be physically separated. The removal of the extraneous gas apparently increases the settling rate.

Claim 12, considered as illustrative by the Patent Office Board of Appeals, reads as follows:

"12. In the process of producing alkyl benzene sulfonic acid from a reaction mixture comprising alkyl benzene sulfonic acid having from 10 to 18 carbon atoms in the alkyl group and excess sulfuric acid of greater than 86% concentration, said reaction mixture containing extraneous gas, the improvement of rapidly separating said alkyl benzene sulfonic acid from a substantial portion of said excess sulfuric acid by adding water to the reaction mixture containing the same to reduce the concentration of the sulfuric acid therein below 86% strength and providing a volume thereof of at least 35% of the total volume and by subjecting the aqueous mixture of alkyl benzene sulfonic acid and excess sulfuric acid to a pressure less than atmospheric pressure substantially to remove therefrom said extraneous gas, whereby an emulsion is formed of said alkyl benzene sulfonic acid as a discontinuous phase in said sulfuric acid of less than 86% concentration as a continuous phase, allowing the mixture rapidly to settle into its phases and separating the phases from each other."

The Patent Office tribunals, in rejecting the claim, relied upon a United States Patent to Brooks et al., No. 3,024,258, which is owned by the plaintiffs. The patent discloses a process of *reacting* alkyl benzene with sulfuric acid and then separating alkyl benzene sulfonic acid from the resulting reaction mixture. Water is used to dilute the reaction mixture, and extraneous gas is excluded at least through the dilution step. Thereafter, the reaction mixture settles by gravity into distinct phases and the components are physically separated. The exclusion of extraneous gas increases the settling rate in this process also.

Claim 5 of the Brooks et al. patent, considered as illustrative by the Patent Office Board of Appeals, reads as follows:

"5. A process which comprises reacting an alkyl benzene having from 8 to 18 carbon atoms in the alkyl group with sufficient sulfonating agent, selected from the group consisting of concentrated sulfuric acid and fuming sulfuric acid, to form a sulfonation reaction mixture containing excess sulfuric acid while preventing substantial entrainment of extraneous gas, diluting said sulfonation reaction mixture with a sufficient quantity of an aqueous medium to form an emulsion which is rapidly separable by gravity, said emulsion having as the continuous phase at least 22% by volume of sulfuric acid of about 75% to 86% concentration and as the discontinuous phase alkyl benzene sulfonic acid, and separating the phases."

The Patent Office Board of Appeals rejected the claims of the case at suit as unpatentable over the claims of the Brooks patent on the theory that to grant them would be to authorize two patents for the same invention.

The plaintiffs' position, on the other hand, is that certain differences exist between the language of the claims applied for and the language of the claims already patented, and that because of these differences the respective claims define separate inventions.

Essentially, the claims of the patent define a process comprising the steps of a.) reacting two chemicals, b.) diluting the

products of the reaction with water, c.) physically separating the phases of the diluted solution, and d.) carrying out the reaction and dilution steps so as to prevent "substantial entrainment of extraneous gas." The claims applied for in the application define a process comprising the steps of a.) diluting the products of the chemicals reacted in the first step of the patented process with water, b.) physically separating the phases of the diluted solution, and c.) carrying out the dilution step in the presence of a partial vacuum so as to remove any extraneous gas that might have remained in the products of the reaction.

After reviewing the evidence, the Court finds that the differences between the subject matter already patented and the subject matter sought to be patented are principally two. The first is that the claims of the patent contain the step of reacting alkyl benzene with sulfuric acid, whereas the claims of the application use the products of this reaction as a starting material. The second difference is that the reaction and dilution steps of the patent claims are conducted so as to prevent "substantial entrainment of extraneous gas", whereas the dilution step of the application claims are conducted so as to expose the solution to a partial vacuum which removes any "extraneous gas" that may have remained in the starting materials.

Thus, it can be seen that the claims already patented contain a combination of three procedural steps, while the claims applied for contain a combination of two procedural steps, and that the latter combination is really a "subcombination" of the former combination.

■■ It is a well settled rule in the patent law that subcombinations are patentable independently of the combinations of which they form a part. In a recent decision, the United States Supreme Court stated: "For if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is

within the grant." Aro Mfg. Co., Inc., et al. v. Convertible Top Replacement Co., Inc., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). Accordingly, an inventor receiving a patent for a combination has no protection against a competitor who uses one of the combination's elements. The inventor must, to fully safeguard his monopoly, also obtain coverage for each "subcombination" as a separate entity.

■ In the judgment of the Court, the language of the claims applied for constitutes a proper subcombination of the process already patented, and thus is independently eligible for a patent.

A second issue in this case was presented by plaintiffs' offer to disclaim and dedicate to the public that portion of the term of any patent the Court might authorize that would extend beyond the expiration of the patent already held. The Court of Customs and Patent Appeals has ruled that under some circumstances such disclaimers serve to avoid a rejection by the Patent Office on the ground of double patenting. The pertinent decisions are In re Robeson, 331 F.2d 610 (1964), and In re Kaye, 332 F.2d 816 (1964). The instant case is the first in which the terminal disclaimer issue has been seriously raised by any party before this Court. In the recent case of Blumcraft of Pittsburg v. Ladd, 144 U.S.P.Q. 562 (1965), the plaintiff offered to file, and stated that it intended to file, a terminal disclaimer of the character offered here. This Court sanctioned this proffer in its disposition of the case, even though the disclaimer was immaterial to the issues upon which the case was actually decided.

■ Henceforth, however, this Court will not consider the question of whether a terminal disclaimer might avoid a rejection on double patenting unless the terminal disclaimer first has been filed in the Patent Office, and has been ruled upon by the Patent Office Board of Appeals. The circumstances under which double patenting might or might not exist, and the factors to be considered in judging whether a particular disclaimer has the effect of avoiding the evils double

patenting rejections are designed to prevent, are each subjects upon which the Court should hesitate to rule without first having the benefit of a finding by the expert body commissioned to deal with them. Additionally, as a matter of judicial housekeeping, it seems unwise to allow a patent applicant to litigate questions of double patenting in this Court while keeping in reserve an unfiled terminal disclaimer, which offers to file only if it appears that otherwise he might lose the case. This becomes intolerable in instances where the double patenting rejection might have been withdrawn by the Patent Office if the disclaimer had been before it from the beginning.

The Court will find for the plaintiffs, against the defendant, and will authorize the Commissioner of Patents to grant Letters Patent of the United States containing claims 11 through 14 of plaintiffs' application No. 774,600.

The above Opinion contains Findings of Fact and Conclusions of Law.