C-THRU PRODUCTS, INC. and Leon Laguerre, Plaintiffs,

v.

UNIFLEX, INC., Defendant.

No. 64-C-1120.

United States District Court
E. D. New York.

Dec. 13, 1966.

Temko & Temko, New York City, for plaintiffs; Charles E. Temko, New York City, of counsel.

Lane, Aitken, Dunner & Ziems, Washington, D. C., for defendant; William F. Suglia, New York City, of counsel

BARTELS, District Judge.

This action was instituted by plaintiff Leon Laguerre, the patentee of two Laguerre patents numbers 3,140,038 (the first Laguerre patent) and 3,227,358 (the second Laguerre patent), and plaintiff C-Thru Products, Inc., his exclusive United States licensee, for infringement of both patents. Defendant, denying the validity and infringement of both patents, brings three motions pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for partial summary judgment holding (1) both patents invalid under 35 U.S.C.A. § 103, (2) non-infringement of the first Laguerre patent, and (3) the second Laguerre patent invalid for double patenting. Obviously, motions (2) and (3) will be rendered moot if motion (1) is granted. At the hearing the plaintiffs agreed that motion (2) should be granted.

Motions for summary judgment in patent cases must be considered with unusual caution (Van Brode Milling Co. v. Kravex Manufacturing Corp., E.D. N.Y.1957, 21 F.R.D. 246; Servaas & Company v. Dritz, S.D.N.Y.1960, 185 F. Supp. 61). In this case, however, all parties have agreed that the facts are not in dispute; in addition, the prior art and the patent claims are devoid of complexity and are easily understandable without expert aid. Under the circumstances, such a motion represents a most useful legal invention to expedite the litigation. Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 2 Cir. 1956, 233 F.2d 9, 10, cert. denied, 1956, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123, rehearing on cert. denied, 1958, 355 U.S. 949, 78 S.Ct. 528, 2 L.Ed. 2d 534; Alex Lee Wallau, Inc. v. J. W. Landenberger & Co., S.D.N.Y.1954, 121 F.Supp. 555; Rubinstein v. Silex Co., S.D.N.Y.1947, 73 F.Supp. 336. It is immaterial that only a partial summary adjudication is sought since it has the same purpose of avoiding waste of time and effort. See, Aileen Mills Co. v. Ojay Mills, Incorporated, S.D.N.Y.1960, 188 F. Supp. 138; Meikle v. Timken-Detroit Axle Co., E.D.Mich.1942, 44 F.Supp. 460;

**216**

E. I. Du Pont De Nemours & Co. v. U. S. Camo Corp., W.D.Mo.W.D.1956, 19 F.R.D. 495.

### The First Laguerre Patent

The subject of the two Laguerre patents involved in this case is "reclosable handle bags". The first Laguerre patent contains four claims of varying scope directed to a combination of a bag with handle elements secured to the mouth of the bag. Each claim includes a bag with flexible strips attached along the opposite sides of the mouth of the bag, a pair of centrally disposed gripping bows, each integrally formed on a respective strip, as well as complementary projections or studs and recesses on the respective strips. Each claim recites the location of the studs and recesses in the zone where each bow is connected to its respective strip. Claims 1 and 2 define the supporting strips as being plastic; claim 3 describes the bag and flexible strips as "Thermoplastic" and being heat-welded together; and claim 4 refers to a bag of "thin flexible sheet material". Plaintiffs claim that as a result of the structure covered by the invention set forth in this patent, forces applied to the bows or handles in opposite directions are transmitted directly to the interconnection of the bows or handles with the strips, so that a separating force is directly applied to the complementary studs and recesses.

Reference to the file wrapper of this patent discloses that of the three claims which accompanied the original application, claims 2 and 3 contained a specific limitation locating the fastening members in the zones where the bows or handle legs were joined to their respective supporting strips. Claim 1 contained no such limitation. All three claims were rejected as being covered by prior art and were thereafter cancelled. Subsequently there were substituted therefor claims 4-7, in support of which it was argued that in each claim "an essential and important feature of the present invention is recited namely, the arrangement of the junction points where the handles on the two strips merge with their respective strips, and the location of the fastening elements in these widened areas. This arrangement is not found in any of the cited patents." (File History, p. 15.)

After a second rejection of all of the claims, 4-7, based upon prior art (File History, pp. 18, 19), the applicant, in his responsive letter, emphasized the criticality of the specific location of the fastening members in the area where the handles and bows interconnect with the strips, asserting that this location "results in improved convenience in opening, since it is merely necessary to pull the handles apart from each other to gain the leverage afforded by the peripheral length of the bows to assist in prying apart the interlocking projections and recesses. If the projections are provided only at other portions, this leverage is not obtained, and therefore it is necessary to exert considerably more force to obtain an equivalent result * * *." (File History, p. 22.) As thus amended, the application was found patentable and a patent was issued accordingly.

Reading the claims as allowed, with reference to the rejected ones it is obvious that the essence of the patent is the specific location of the fastening members in the zone where the handles join the respective supporting strips of the handle bag. Under the doctrine of file wrapper estoppel, these claims cannot be enlarged to cover those which were previously eliminated from the patent by the amendment. As explained by Judge Learned Hand in Keith v. Charles E. Hires Co., 2 Cir. 1940, 116 F.2d 46, 47, "The theory of the 'estoppel' as it is called, is that, by assenting to the cancellation of the claim and by amending it, the applicant has abandoned it as it stood." Goodyear Dental Vulcanite Co. v. Davis, 1880, 102 U.S. 222, 26 L.Ed. 149; Exhibit Supply Co. v. Ace Patents Corporation, 1942, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736; Calmar, Inc. v. Cook Chemical Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d

545.[1] Plaintiffs are, therefore, estopped from asserting that the patentability of the handle bag rests upon any other feature. AMP Incorporated v. Burndy Corporation, 3 Cir. 1964, 332 F.2d 236, cert. denied, 1964, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49.

### The Second Laguerre Patent

The second Laguerre application, which is claimed to be a continuation-in-part of the first, asserted five claims, the first three of which were article claims, as in the first Laguerre patent, and were accordingly rejected on the ground of double patenting over corresponding claims in the first Laguerre patent. The remaining two claims, 4–5, were also rejected as "being drawn to the obvious method of making the bag of claim 3" (File History, p. 15). Claims 2 and 3 of the second Laguerre patent were then cancelled but the applicant argued in response to official Office Action that claim 1 was a sub-combination of some of the elements of the claim as a separate entity, whereas the first Laguerre patent was a combination of the totality of all of the elements of the claim and accordingly should be allowed. Nevertheless, the Examiner again rejected this claim over the first Laguerre patent stating that "the filing of a Terminal Disclaimer as discussed at an interview would obviate this rejection." (File History, pp. 21–22.) The terminal disclaimer was then filed and the rejection of double patenting was withdrawn and the second Laguerre patent was issued shortly thereafter.

The single claim of the second Laguerre patent is directed to a handle and closure device per se rather than to the combination of a handle and bag. Although the second Laguerre patent also contains each of the other three elements covered by the four claims of the first Laguerre patent (flexible strips, a central gripping bow integrally formed on each strip, and complementary studs and recesses on the respective strips), the patent did not contain the key limitation as to the location of the fastening members in the zones in which the handle legs were connected to the respective supporting strips. Consequently, the scope of the single claim in the second Laguerre patent was more encompassing than any of the four claims in the first Laguerre patent. Thus the file wrapper estoppel applicable to the first Laguerre patent as to the criticality of the location of the fasteners was avoided by the issuance of a patent upon the second Laguerre application.

### Double Patenting

It is fundamental that a patentee, in seeking a subcombination patent, cannot enlarge the scope of the parent patent by omitting a restriction contained therein and thus avoid file wrapper estoppel. Thomas v. Simmons Co., 7 Cir. 1942, 126 F.2d 743; Ladenson v. Overspred Stoker Co., 7 Cir. 1937, 89 F.2d 242. The rejection by the Examiner of the second Laguerre application, however, was not predicated upon file wrapper estoppel but upon the ground of double patenting. The Examiner withdrew this rejection upon the filing of a terminal disclaimer. Congress never intended, by the enactment of 35 U.S.C.A. § 253, to permit the use of a terminal disclaimer for the purpose of avoiding file wrapper estoppel. Only when the real objection to granting the second application is an extension of the monopoly is such a terminal disclaimer proper. But double patenting and file wrapper estoppel must not be confused, since a terminal disclaimer may under certain circumstances be employed to avoid the objection of the former but never the effect of the latter. Sterling Varnish Company v. Louis Allis Company, E.D.Wis.1957, 149 F.Supp. 826; Application of Robeson, 1964, 331 F.2d 610, 51 CCPA 1271.

In order that a terminal disclaimer may obviate the defect of double

---

[1.] If the applicant wishes an immediate judicial determination of the question, rather than risk a claim of file wrapper estoppel, he may appeal to the United States Court of Customs and Patent Appeals (35 U.S.C.A. § 141 et seq.) or institute a civil action against the Commissioner (35 U.S.C.A. § 145).

patenting, both inventions must be patentable over the prior art. If the first invention is not patentable, no objection to the second application predicated upon the grounds of obviousness and double patenting, can be cured by the filing of a terminal disclaimer. Hays v. Brenner, 1966, 123 U.S.App.D.C. 96, 357 F.2d 287.[2] If the first invention is patentable, a second patent cannot be issued for the same invention under the principle that only one patent may be issued for one invention and if two are issued, the second must be declared void. Miller v. Eagle Manuf'g Co., 1894, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121.

There may be cases, however, involving two separate inventions each of which is patentable over the prior art, absent a patent on the other, in which the objection of double patenting may be obviated by the filing of a terminal disclaimer under 35 U.S.C.A. § 253. Application of Bowers, C.C.P.A.1966, 359 F.2d 886. Where the claims of the second application are an obvious modification or enlargement of the claims of the first patent (Application of Robeson, supra) or refer to a separate but related invention patentably indistinct from the first (Application of Kaye, 1964, 332 F.2d 816, 51 CCPA 1465), then the second application may be allowed upon the filing of a terminal disclaimer. If, however, the claims of the second application are nothing more than "mere colorable variations of the same idea", they are directed to the identical invention and must be disallowed. Application of Siu, 1955, 222 F.2d 267, 42 CCPA 864. Under the circumstances, the effect of file wrapper estoppel may not be avoided by the filing of a second application together with a terminal disclaimer. It is true that subcombinations, such as that purportedly covered by the second Laguerre application, are patentable independently of the combinations of which they form a part. Aro Mfg. Co. v. Convertible Top Replacement Co., 1961, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592, rehearing denied, 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201; Brooks v. Reynolds, D.C.1965, 239 F.Supp. 984. In such cases the original combination must be patentable over prior art and the sub-combination must not, at the same time, avoid the effect of file wrapper estoppel. The filing of a terminal disclaimer cannot cure either defect, and the use of such a device would be an abuse in violation of the legislative intent.

## Obviousness

Aside from the claims barred by file wrapper estoppel, there still remains to be decided the validity of the remaining claim (criticality of the location of the fasteners) in the first Laguerre patent, and the remaining claim (sub-combination) in the second Laguerre patent. In the resolution of this question, it is enlightening and relevant to consider all of the claims of both of these patents without invoking the principle of estoppel. As set forth in 35 U.S.C.A. § 103, "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains", a patent should not issue. In Graham v. John Deere Co. of Kansas City, 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, the Supreme Court, in interpreting 35 U.S.C.A. § 103, added in 1952, concluded that the Act simply codified the judicial precedents relative to the level of inovation necessary to sustain patentability. In making the relevant basic inquiries, the Court is cognizant of the presumption of validity which accompanies the action of the Patent Office (Westinghouse Electric

2. There a prior application by one patentee was considered prior art as to all disclosures to a subsequent applicant, each of whom had assigned his patent application to the same corporation. However, where the applicant is the same in both cases, a prior application by him is prior art only for what it claims to a subsequent application by him. See, Hazeltine Research, Inc. v. Brenner, 1965, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304.

& Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Zenith Radio Corporation v. Ladd, 1962, 114 U.S.App.D.C. 54, 310 F.2d 859) and also the fact that the failure of the Patent Office to consider the teachings of important portions of the prior art[3] weakens such presumption. Dwyer v. United States, Ct.Cl.1966, 357 F.2d 978; Koehring Company v. E. D. Etnyre & Company, N.D.Ill.W.D.1966, 254 F.Supp. 334. It is, however, in the last analysis, the responsibility of the Court to decide whether the patents satisfy the test of non-obviousness and the standard of invention as required by the Constitution.

■■■ A determination of whether the Patent Office should have granted Letters for each of these patents upon the ground of non-obviousness over the prior art to a person having ordinary skill in the art depends upon an examination of the references cited by the Patent Office[4] and those relied upon by the defendant.[5] From the defendant's references it appears that each element in the patented device was known to at least one of the prior patentees although not combined into one device. It is well settled that a device that brings old factors into cooperation may be patented as a combination patent (Keystone Manuf'g Co. v. Adams, 1894, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed 527), but the key to the patentability of such a combination depends upon the presence or absence of invention. If the combination of the old elements does not perform any new or different function or operation theretofore performed, then it is not pattentable. "The conjunction or concert of

known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics." Great Atlantic & P. Tea Co. v. Supermarket Eq. Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162, rehearing denied, 1951, 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663.

■■■ References to negate patentability may be combined in a manner to determine "whether one skilled in the art with the references before him could have made the combination of elements claimed without the exercise of invention" (Application of Shaffer, 1956, 229 F.2d 476, 478, 43 CCPA 758), but references combined indiscriminately are relatively impertinent in the determination of obviousness. All the patent references here combined are limited to bag and closure device art.

Upon a review of the prior art references relied on by the defendant, it is apparent, without the assistance of experts, that the combination of the old elements herein involved was obvious without the exercise of invention. To begin with, the Warner and Mintzes patents show shopping bags formed of fabric or the like, which include both handles and snap fasteners located at the upper portions of the bags for retaining them in a closed position. The Verlin patent, although addressed to paper carrying bags rather than plastic, teaches the same overall structure as the two Laguerre patents. When combined, four prior patents—

3. Here the Examiner did not consider the Hollis and the French patents and in the second Laguerre application perhaps the Verlin patent.

4. *The First Laguerre Patent:*

| Fishwick | 2,192,131 | Feb. 27, 1940 |
| Verlin | 2,722,367 | Nov. 1, 1955 |
| Wheeler | 2,843,309 | July 15, 1958 |
| Denton | 2,873,905 | Feb. 17, 1959 |
| Harrah | 2,978,769 | Apr. 11, 1961 |
| Whiteford | 3,052,347 | Sept. 4, 1962 |

*The Second Laguerre Patent:*

| Harrah | 2,978,769 | Apr. 11, 1961 |
| Laguerre | 3,140,038 | July 7, 1964 |

5. *Defendant's:*

| Hollis | 979,763 | Dec. 27, 1910 |
| Warner | 2,457,422 | Dec. 28, 1948 |
| Mintzes | 2,532,778 | Dec. 5, 1950 |
| Rosenthal | 2,709,290 | May 31, 1955 |
| Verlin | 2,722,367 | Nov. 1, 1955 |
| Harrah | 2,978,769 | Apr. 11, 1961 |
| French | 1,132,628 | Nov. 5, 1956 |

Verlin, Harrah, Hollis and French—cover all of the elements of both Laguerre patents. This may be illustrated by a comparison of the essential elements of both Laguerre patents with the corresponding features found in the above patents as follows:

(1) The principle of locating the closure device at the juncture of strip and handle, which is the key to both Laguerre patents, is disclosed in both the Hollis[6] and French patents.

(2) The principle of a thermoplastic bag with thermoplastic strips heat-welded to the bag is disclosed in the Harrah patent. While it does not mention specifically the material from which the strips are formed, the cross-sectioning illustrated in Figs. 2, 3, 4 and 5 of the drawings establishes that the strips are formed of synthetic resin material and are obviously thermoplastic in nature since they are described as being heat sealed to the bag.

(3) The principle of coextensive strips with coextensive handles is found in the Verlin and Hollis patents. Parallel coextensive strips with coextensive carrying bands are also disclosed in the French patent, which indicates that it is designed to facilitate simplicity of manufacture and ease of separation or opening.

(4) The principle of the stud-recess closure device appears in the Harrah patent, the French patent and the Hollis patent.

Claim 4 of the first Laguerre patent adds a limitation that the loop handles are provided with widened areas at their points of attachment to the supporting strips. The only purpose of this disclosure was to increase the strength of the assembly, but this is an obvious expedient which does not add patentability to an otherwise unpatentable claim.

A more graphic illustration of the comparison of the elements in the two Laguerre patents with the corresponding elements of the patents above described, is attached hereto as an appendix.

The single claim of the second Laguerre patent is directed to the handle and closure device as a sub-combination of the handle bag combination defined in the claims of the first Laguerre patent. A similar sub-combination of handle and closure device is disclosed in the Verlin patent except that the Verlin patent has a tab locking closure device instead of a stud-recess closure device and is constructed of "heavier paper stock, cardboard, resin impregnated fabric and the like", rather than thermoplastic material. The fastening means found in both Laguerre patents are disclosed in the Harrah, Hollis, French, Mintzes and Warner references, and the fabrication of corresponding supporting strips of thermoplastic material is found in the Harrah patent. It is true that the Verlin patent does not permit a single heat-sealing process but the teachings of the French patent combined with the teachings of heat-welding in the Harrah patent make this process obvious to one skilled in the art.[7]

The second Laguerre application did not purport to add to or enlarge the claims of the first Laguerre application, nor did it relate to a separate invention as such. The file wrapper discloses that upon the double patenting rejection Laguerre stated that its object was to protect, as a separate invention and sub-combination, some of the elements constituting the combination of the first

---

6. The Hollis patent specifically discloses that it is "advantageous to locate the fastening members 22 and 23 at the points where the handles 29 are attached to the lips 21, as shown by Fig. 1. This arrangement of the fastening members enables them to be disengaged from each other by pulling in opposite directions on the two handles." This is precisely the advantage claimed by Laguerre for his structure.

7. In this connection it should be noted that the method claims in the second Laguerre patent were rejected upon the ground that they constituted an obvious method of manufacturing the bag.

Laguerre patent. However, if the original combination is unpatentable, it follows, at least in this case, that the subcombination is likewise invalid and no terminal disclaimer may eliminate this defect. Application of Robeson, supra.

■■■ Therefore, it is the judgment of the Court that both Laguerre patents represent a combination of elements theretofore anticipated in the prior art, which was obvious to a person skilled in the art at the time and which added no invention to the sum total of these elements. In other words, the total was not greater than the sum of the parts. This is particularly true when the claims are limited to the location of the closure device at the juncture of the strips and handles. Accordingly, the claims do not define a subject matter which is patentable and both patents are invalid.

Upon the grounds of both obviousness and double patenting, both the first and second Laguerre patents must be held invalid and accordingly defendant's first motion for partial summary judgment is hereby granted.

Settle order within ten (10) days on two (2) days' notice.

## APPENDIX

| Laguerre Patents [1] | Verlin Patent | Hollis Patent | French Patent | Harrah Patent |
|---|---|---|---|---|
| A) Closure device located at juncture of strip and handle | Closure device not located at juncture of strip and handle | Closure device located at juncture of the lip and handle [3] | Closure device located at juncture of strip and carrying band segment [4] | Closure device not located at juncture of strip and handle |
| B) Parallel coextensive strips and coextensive handles | Parallel coextensive strips [2] and coextensive handles | Parallel coextensive lips and coextensive handles | Parallel coextensive strips and coextensive carrying bands | Non-coextensive strips. No handles. |
| C) Stud-recess closure device | Tab locking closure device | Stud-recess closure device | Stud-recess closure device | Stud-recesses closure device |
| D) Thermoplastic bag and thermoplastic strips | Paper bag. Heavy paper strips | No description of bag or lip material | No description of bag or band material | Thermoplastic bag and thermoplastic strips [5] |
| E) Strips heat-welded to bag | Strips stapled or glued to bags | The lips are an integral part of bag | No description of how bands are attached to bag | Strips heat-welded to bag |

[1] The Laguerre patents also describe the juncture of the handles to the strips as being "widened areas"; however, the use of widened areas for added strength is obvious.

[2] The tab locking arrangement prevents the strips from being exactly coextensive.

[3] Such lips perform similar functions as the Laguerre strips, but are an integral part of the bag.

[4] The strip and the carrying band are two parts of a single band and the strip parts perform the functions of the Laguerre strips. But the carrying bands are not true handles.

[5] Implicit from the fact that attachment process is heat welding.