### Alfred WINDMÖLLER et al., Plaintiffs,

v.

### Leon LAGUERRE et al., Defendants.

### Civ. A. No. 544-66.

United States District Court
District of Columbia.

Aug. 8, 1968.

John F. Witherspoon, Martin Fleit, Harvey B. Jacobson, Jr., Stevens, Davis, Miller & Mosher, Washington, D. C., for plaintiff.

George VandeSande, Moore & Hall, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

The origins of this litigation have been set out in a prior Memorandum Opinion dated May 3, 1968, 284 F.Supp. 563. After a full hearing, briefs, and oral argument, the Court now has before it the amended complaint challenging validity of the two Laguerre patents being exploited by defendants. The validity of each of these patents is challenged on grounds of obviousness and as to Laguerre II on the added ground of double patenting. An extended discussion is unnecessary for the facts are mainly not in dispute, the alleged inventions simple, and the result clearly impelled by applicable law.

Laguerre I (U.S. Patent No. 3,140,-038) was applied for originally on April 19, 1962, and issued on July 7, 1964. The patent is on a "handle and closure device for thermoplastic bags." It claims a pair of strips of thermoplastic material, adapted to be sealed by heat welding along the edges of the mouth of a thermoplastic bag. Each strip is provided along one of its edges with a central gripping handle; thus there is a pair of handles to be attached to the bag on either side of the mouth. One of the pair of strips is provided with studs, the other with recesses; the studs and recesses are matched, and so shaped as to provide a snap-action type of fastening so that the bag to which the strips are heat welded can be securely closed. The strips are to be fitted at the mouth of the bag, and the studs and recesses are located in the zones where the handles are attached to the strips, at which points the handles have a widened area to provide strength where they join the strips.

Laguerre II (U.S. Patent No. 3,227,358) was applied for on January 3, 1964, and issued on January 4, 1966. The patent is directed to a handle and closure device per se rather than to a combination of a handle and bag. The elements of the claim, as with Laguerre I, are flexible strips adapted to be sealed in a bag by heat welding, a central gripping bow formed on each strip, and complementary projections and recesses. There is, however, no limitation as to the location of the fastening members in the zones in which the handles are connected to the strips. The device is adapted to be fitted inside the mouth of the plastic bag prior to heat sealing. Laguerre II issued only after the filing of a terminal disclaimer limiting the protection of the patent to the period of Laguerre I.

The Court has determined that each Laguerre patent is invalid for obviousness under 35 U.S.C. § 103 in the light of the prior art and makes the determination as to Laguerre II without considering Laguerre I as prior art. The double patenting issue need not be considered. Both patents must fall.

Laguerre was not mechanically or technically trained. He arrived at his results after some experimentation, aided by a skilled molder of plastic. His testimony supported nothing approaching a flash of genius. He had made and marketed different types of bag handles and closures for use on plastic bags and understood the merchandising requirements of the potential market. He started his work on handle closure devices in 1959–1960 and developed, among other things, a zipper closure with a flexible handle (Def. Ex. 4) and a single plastic handle in combination with a zipper closure. (Def. Ex. 1). Immediately before his alleged invention he used plastic strips inside the mouth which were heat sealed and joined by a complementary projection and recess along the entire length of the strips. (Def. Ex. 7). These previous developments were not entirely satisfactory, particularly considering the requirement of low cost and mass production.

When Laguerre did the work that resulted in the patents here at issue, the following were well known.

(1) Heat sealing of plastics, preferably by sealing the lighter material onto the heavier material. [French patent No. 1,296,741, applied for May 13, 1961, issued May 14, 1962; Rosenthal patent, U.S. No. 2,709,290, issued May 31, 1955; Harrah patent, U.S. No. 2,978,769, issued April 11, 1961; Teweles patent, U.S. No. 3,128,035, filed September 20, 1961, issued April 7, 1964.]

(2) Rigid plastic handles used as carrying devices for plastic bags. [Verlin patent, U.S. No. 2,722,367, issued November 1, 1955; Teweles patent, U.S. No. 3,128,035, filed September 20, 1961, issued April 7, 1964; French patent No. 1,296,741, applied for May 13, 1961, issued May 14, 1962.]

(3) Handles, one on each strip, which were immediately opposite each other, of the same configuration and brought together into a single carrying device upon closure. [Verlin patent; French patent No. 1,296,741.]

(4) Plastic strips sealed in parallel fashion on the *inside* of the mouth of the bag to accomplish some type of closure with a related rigid or flexible carrying handle. [Teweles patent; Swiss Industrial Design No. 97,889, filed October 12, 1961; Austrian Industrial Design No. 2158, filed January 17, 1962.]

(5) Widening of a carrying handle at the base to provide strength where the handle joins the related strips. [Teweles patent; British patent No. 660,718, issued November 14, 1951.]

The only problem unresolved was how best to fasten the two strips and their respective handles together. Different techniques had been attempted, none of which were entirely successful, such as grooves fitting into opposite recesses in the strips or the handles (Def. Exs. 3,

7); French patent No. 1,132,628, issued November 5, 1956; Harrah patent, U.S. No. 2,978,769, issued April 11, 1961); a flange that fitted into a recess on the opposite strip (French patent No. 1,296,741); a zipper arrangement (Def. Exs. 1, 4); and studs which meshed with recesses after being given a slight twist to interlock (Rosenthal patent, U.S. No. 2,709,290, issued May 31, 1955). Considerations of production cost, effectiveness or difficulty in use made none of these closure developments satisfactory, although a number of them, with variations, had had commercial use in varying degrees.

Laguerre, assisted by the molder, in a short time developed a simple series of plastic studs which fitted into opposite recesses and were placed advantageously at the handle bases (Laguerre I) or along the strips between the handles and elsewhere (Laguerre II). This concept was sound, more effective than prior developments, and met with commercial success. Production costs were lower and the bag closure could be readily opened and closed by the shopper without difficulty.

Metal snaps with male and female parts had long been in use on non-plastic bags, placed at the point where a flexible handle connected with the bag (Hollis patent, U.S. No. 979,763, issued December 27, 1910). Laguerre naturally thought of using metal snaps embedded in the plastic handle but considerations of cost made this impractical. With the aid of the molder he developed the plastic stud-recess snaps in lieu of metal snaps and used widened handles at the points where they met the strips to give greater strength and ease of fastening.

There is nothing in the evidence which even remotely suggests that studs and recesses of plastic were unknown in the plastics art. Other types of studs and recesses made of plastic had been used on bag closures.* The particular

* It was also shown that somewhat comparable use of studs and recesses on plastic bag closures were developed in Switzerland in 1961 and later in Austria in 1962, but that evidence left in doubt whether these apparent independent de-

plastic studs and recesses were not patented as such nor claimed by Laguerre to be unique. Thus, in essence, all that the Laguerre I and Laguerre II patents represented was the use of plastic stud and recess snaps at the widened handle bases and elsewhere along the strips as an improved method of closure.

■ While some genuine significant inventions, particularly in the mechanical field, seem simple and obvious in retrospect, not all simple and obvious mechanical advances rise to the dignity of invention. Here there was no long-felt need suddenly satisfied by invention. It is true that the Laguerre developments were welcomed by the trade and undoubtedly encouraged the more frequent use of plastic bags of the types requiring the plastic carrying handle device, but this is not enough on the facts of this case. Cf. Reiner v. I. Leon Co., 285 F.2d 501 (2d Cir. 1960). Laguerre's developments came along in normal course, they were obvious and only known mechanical skills were applied to solve a simple problem. This is not to take credit from Laguerre. He saw the need, he sensed the potential market, and he had developed machines he sold that were suited to heat sealing the handles to bags. The following from Freeman v. Brenner, 261 F.Supp. 286 (D.D.C. 1966) is clearly in point:

"It is not disputed that the plaintiff has made an advance in the art. His contribution appears to be praiseworthy and useful. It is not, however, every advance, every improvement, and every new idea that is accorded a patent monopoly under the patent law. In order to be worthy of a patent, the improvement or the advance must be more than the product of mechanical skill of a person ordinarily skilled in the art in which he works. It must be the product of what has been called the inventive faculty." 261 F.Supp. at 287.

The file wrapper history of these patents is set out accurately in C-Thru Products, Inc. v. Uniflex, Inc., 262 F. Supp. 213 (E.D.N.Y.1966) and need not be repeated here. It is impossible to understand the actions of the Patent Examiners as they reacted to various tactical and semantic maneuvers of Laguerre's ingenious and persistent patent counsel. Reviewing the file wrappers it appears that words overcame reality. A broad patent was sought. It was rejected for a very narrow one—Laguerre I. A second patent practically as broad as the first was then obtained with benefit of a terminal disclaimer—Laguerre II. The net effect was to allow Laguerre to claim practically any plastic handle device in the field which had this type of studs and recesses and fitted inside the bag to facilitiate sealing.

■ Defendant vigorously argues that patentability may be found in the combination of known elements found in the prior art so as to achieve a new and unexpected result and urges the presumption of validity flowing from the Patent Office actions.

Courts have had difficulty over the years attempting to put a precise standard for invention into language that conveys the same meaning to patent lawyers and to lay judges. Varying interpretations of each different expression of the inventive concept have perpetuated an unevenness of meaning and application. Even with the benefit of the latest attempt in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), uncertainty will continue. Complex inventions appear in disciplines such as chemistry and electronics that almost defy description in patent claims. If the invention itself is so abstruse surely the concept of invention must be sufficiently flexible to accommodate these pioneer developments in novel and developing art. The task is not to attempt further refinements in the lan-

velopments were in whole or part the result of a breach that occurred in Laguerre's plant security. Swiss Industrial

Design No. 97,889; Austrian Industrial Design No. 2158.

guage defining invention, but to discourage efforts to create the appearance of invention by the techniques all too familiar to writers of patent specifications. Lack of invention is so apparent here that it was found in summary judgment proceedings in another jurisdiction. C-Thru Products, Inc. v. Uniflex, Inc., 262 F.Supp. 213 (E.D.N.Y. 1966), affirmed, 397 F.2d 952 (2d Cir., July 10, 1968). While great weight attaches to the determination of the Patent Office, the Court cannot ignore the new evidence now of record which includes both the testimony of Laguerre and additional prior art (Hollis, Rosenthal, Teweles, French 1,296,741, French 1,132,628, and British patents as well as Austrian and Swiss Industrial Designs) and other materials (Def. Exs. 1–8). The weight to be given action of the Patent Office is, in any event, less where the materials submitted to that Office on an ex parte basis are brought into sharper focus, as they have been here, through the adversary process.

This is, moreover, not a field where great expertise is required to measure the extent and nature of prior art. Only simple patents combining known mechanical features are involved. The Patent Office has not applied appropriate standards. It has permitted the semantics of patent claim phraseology to obscure the lack of any inventive contribution from the combining of known elements through ordinary skill. Nothing significant was added to the total stock of knowledge. There was no unusual or surprising consequence from the unification of the elements. Nor was it improbable that the result achieved would follow as a matter of course from the assembly of old elements. The Supreme Court laid down these tests long ago in Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683 (1851) and later decisions have given the tests continued emphasis and reality. Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Minnesota Mining & Mfg. Co. v. Coe, 69 App.D.C. 217, 99 F.2d 986 (1938); Thompson v. Coe, 78 U.S.App.D.C. 174, 138 F.2d 284 (1943).

The Patent Office ignored these decisions in this instance. The Patent Office must apply tighter standards least the entire system fall of its own weight. Whenever excessive liberality is shown patents proliferate in a field and the true progress of the art is blocked. Invention is a constitutional standard. As such, its dignity should be preserved.

The foregoing constitutes the Court's findings of fact and conclusions of law. Counsel shall submit appropriate findings of fact, conclusions of law and form of order by September 1, 1968.